UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-60392-Civ-COOKE/TORRES

MYLES GERMAN,

    Plaintiff,

vs.

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendant.

_____/

**OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

    Plaintiff brings this action against Defendants for their denial of his claims for long-term disability ("LTD") benefits, violating 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 – 1461. Both sides have filed motions for summary judgment (ECF Nos. 28, 30). I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons provided in this Order, summary judgment is granted in favor of Defendants.

**I. BACKGROUND**

    AXA Equitable Insurance Company's ("AXA") Long Term Disability Plan ("LTD Plan") is an employee welfare benefit plan covered under ERISA that provides LTD benefits to eligible employees. Joint Pretrial Stip. ¶ 5(a), ECF No. 43. Two fiduciaries of the LTD Plan include AXA as the LTD Plan Administrator and Metropolitan Life Insurance Company ("MetLife") as the Claims Administrator. *Id.* ¶ 5(c), (d). AXA funds LTD benefits payable under the LTD Plan to eligible employees. *Id.* ¶ 5(f). MetLife gathers claims under the LTD Plan and has discretionary authority to determine benefits under the LTD Plan. *Id.* ¶ 5(e).

    The LTD Plan defines an employee as "Disabled" and, thus, eligible for LTD benefits if, "due to Sickness or as a direct result of accidental injury" that is being properly treated, the employee is unable to earn more than 80% of his own occupation's predisability earnings during the two years following the injury and unable to earn more than 60% of any

gainful work after two years. Def's Stmt. Material Undisp. Facts ¶ 8, ECF No. 26.[1] The LTD Plan includes an Elimination Period, where MetLife will not pay benefits to an employee who becomes disabled, for 180 calendar days. ECF No. 23-13 at 19, 22. The LTD Plan also states, "If You return to Active Work, We will consider You to have recovered from Your Disability." Def's Stmt. Material Undisp. Facts ¶ 10. The LTD Plan defines "Active Work" or "Actively at Work" as when "You are performing all of the usual and customary duties of Your job on a Full-Time basis." *Id.* The LTD Plan contemplates returning to "Active Work" before and after an employee completes the Elimination Period, stalling a reset of the period if an employee is "Actively at Work" and is "Disabled" again "due to the same or related" injury. ECF No. 23-13 at 29.

Plaintiff Myles German ("Plaintiff" or "German") was a financial sales professional with AXA who experienced neck and back pains stemming from motor vehicle and snowboarding injuries suffered in 2003. *Id.* ¶¶ 11 – 12. German regularly worked 70 to 75 hours per week until July 2008, but, after citing continued pain from his earlier injuries, reduced his workload to 60 hours per week through February 2009 and then 45 hours and below per week thereafter. *Id.* ¶ 11; Pl's Response to Def's Stmt. Material Undisp. Facts ¶ 11, ECF No. 34. German was considered a full-time employee during the relevant period since he met his sales goals as a sales associate. ECF 23-1 at 131, 151.

German applied for LTD benefits in the fall of 2008, but MetLife denied his claim in October 2009. Pl's Stmt. Material Facts ¶ 2, ECF No. 29. German initially appealed MetLife's denial in May 2010, *id.* ¶ 4, but, after using revised earnings figures and reviewing additional medical and other materials from German over time, MetLife upheld its decision on a third appeal in April 2014. *See id.* ¶¶ 5 – 13, 15 – 16. In its final denial, MetLife concluded German did not have a qualifying disability since he was "Actively at Work" from 2008 through 2012; he could perform the essential functions of his job; and he did not suffer from "any functional limitations on performing his job" to at least 80% of his

---

[1] A movant's statement of undisputed material facts set forth in its Motion and related filings are deemed admitted to the extent they are supported by evidence in the record and not specifically disputed by the non-movant in an opposing statement of facts. S.D. Fla. L.R. 56.1(b); *see also Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1245 – 46 (S.D. Fla. 2009).

predisability earnings, so any later decline in hours was self-imposed. ECF No. 23-2 at 11 – 19.

German sought several opinions from medical professionals before and during MetLife's review process. In 2007, German contacted Drs. Barth Green, a neurosurgeon, and Frank Eismont, an orthopedic spinal surgeon. Dr. Green believed German had a myeloradiculopathy from cervical stenosis and was at high risk for another paralyzing injury; he recommended a decompression surgery but Plaintiff deferred. ECF Nos. 23-2 at 25 – 26; 23-3 at 1 –2. Dr. Eismont also recommended a decompression given German's high risk for catastrophic quadriparesis for even minor accidents, but German did not do so. ECF No. 23-2 at 26. Eismont also noted there was no abnormal signal in the spinal cord. *Id.* In 2009, German sought the advice of neurologist Richard Bailyn and psychologist Sharon Miller. Dr. Bailyn's examination underscored known issues of anterior cervical incision and restricted cervical mobility. *Id.* at 26 – 27. Dr. Miller's neuro-psychological examination revealed no brain damage and detected issues of psychological distress that contributed to his pain and sleep disturbance. *See* ECF No. 23-11 at 1, 46 – 48. German's family physician, Dr. Stephen Silver, advised German to reduce his work hours in February 2009 and later opined to MetLife that German could not perform his duties full-time due to a partial disability. Def's Stmt. Material Undisp. Facts ¶ 20; ECF No. 23-8 at 15.

As part of its investigation, MetLife retained four Independent Physician Consultants ("IPCs"). The IPCs reviewed German's medical files and considered German's physicians' opinions. None believed a physical or psychological disability was present that was worse than German's predisability condition or that imposed on his job duties. *See* Def's Stmt. Material Undisp. Facts ¶¶ 27 – 30. Dr. Lucia McPhee concluded German had not experienced a "significant worsening of his condition to account for his reported loss of function beyond [July 2008] compared to his function earlier." ECF No. 23-5 at 17. Dr. Dennis Gordon noted German had a "highly at-risk cervical cord from 2003 through 2011" without surgery, and that German should have been barred from activities like bouncing and jumping that could "suddenly cause head and neck movement." ECF No. 23-2 at 28. Dr. Gordon also wrote that hyperreflexia or sensory change after 2009 disappeared from German's medical records, a likely sign "of an improved clinical picture," and that any other limitations German made were "self-imposed on the basis of pain." *Id.* In addition,

neither a psychiatrist, Dr. Patricia Lowrimore, nor psychologist, Dr. Timothy McManus, found any functional limitations or disabling psychological conditions due to German's mental and physical health. *See* ECF Nos. 23-2 at 68, 70; 23-5 at 6 – 7.

## II. LEGAL STANDARD

Although this matter is before me on cross motions for summary judgment, ERISA benefits denial cases perch the district court as more of "an appellate tribunal than as a trial court." *See Curran v. Kemper Nat. Servs., Inc.,* No. 04-14097, 2005 WL 894840, at * 7 (11th Cir. 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17 – 18 (1st Cir. 2002)). The court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Id*. Thus, there "may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would." *Pinto v. Aetna Life Ins. Co.,* No. 09-01893, 2011 WL 536443, at *8 (M.D. Fla. Feb.15, 2011); *see also Turner v. Am. Airlines, Inc.*, No. 10-80623, 2011 WL 1542078, at *4 (S.D. Fla. Apr. 21, 2011) ("[W]here . . . the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." (internal quotation marks omitted)).

## III. ANALYSIS

### A. Benefit Determinations Framework

The U.S. Court of Appeals for the Eleventh Circuit has developed a six-step framework for analyzing an administrator's benefits decision:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable"

>
> grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).

**B. Application of Analytical Framework**

    1. Administrator Decision

When a plaintiff challenges a denial of benefits under 29 U.S.C. § 1132(a)(1)(B), a court must review such denial "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). MetLife as the Claims Administrator had the authority to determine benefit eligibility and construe the terms of the LTD Plan. Thus, I will begin the analysis at step two of the Eleventh Circuit framework; "in other words, the Court will proceed as if Defendant's decision, were it reviewable under the *de novo* standard, was in fact wrong." *Pinto*, 2011 WL 536443, at *9; *see also Eady v. Am. Cast Iron Pipe Co.*, 203 F. App'x 326, 328 (11th Cir. 2006).

    2. Administrator Discretion

Where MetLife is the Claims Administrator with the discretion to review a participant's claim, I must decide whether it had "reasonable grounds" to support its decision. The standard of review is the more deferential arbitrary and capricious standard. *See Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010). German has the burden to show that he was disabled and that MetLife's decision was wrong under the arbitrary and capricious standard. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 2147 (11th Cir. 2008).[2]

---

[2] German cites the multi-year delay in MetLife's investigation and final decision on his

5

### 3. Reasonable Grounds to Support Decision

Under the arbitrary and capricious standard, review is limited to whether reasonable grounds existed to support MetLife's denial of benefits to German based on the administrative record before it. *See Townsend v. Delta Family-Care Disability and Survivorship Plan*, 295 F. App'x 971, 976 (11th Cir. 2008). This standard does not mean a fiduciary can run roughshod in its investigation of someone's claims. On the contrary, it must exercise its duties "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1132(a)(1), and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." *Id.* § 1132(a)(1)(B). But "[a]s long as a reasonable basis appears for [a plan administrator's] decision, it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." *Jett v. Blue Cross & Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989).

At bottom, parties dispute the disability definition under the LTD Plan and how it applies to German. I find Defendant reasonably interpreted the LTD Plan's provisions, and reasonably concluded that German was not entitled to LTD benefits. Its decision was neither arbitrary nor capricious.

#### a. *Disability and Active Work*

Central to this case are the definitions of, and interplay between, "Disabled" and "Active Work" under the LTD Plan. As discussed, an employee is "Disabled" under the LTD Plan if "due to Sickness or as a direct result of accidental injury," an employee cannot meet certain levels of predisability earnings over time. Def's Stmt. Material Undisp. Facts ¶ 8. An employee is in "Active Work" when he executes "all of the usual and customary duties" of his job. *Id.* ¶ 10. The LTD Plan specifically states that MetLife

---

LTD benefits as reason to afford less deference to MetLife. I disagree. Here, I do not find that any "technical violations of ERISA's statutory requirements . . . adversely affected the plaintiffs' ERISA rights." *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1318 n.9 (11th Cir. 2000). It appears MetLife conducted its investigation in good faith—gathering documents, interviewing relevant parties, retaining IPCs, and conducting multiple appeals, among other items—that resulted in an extended period of time before a final decision was made.

considers an employee "recovered from [their] Disability" when he "return[s] to Active Work." *Id*.

The parties diverge in their reading of these provisions. MetLife argues the disability provision requires an employee show a functional limitation because of the causality element between the existence of an injury and a loss of earnings. It further believes an employee cannot be concurrently "Disabled" and "Active at Work" given the LTD Plan's wording about how an employee recovers from a disability when they return to "Active Work." German retorts the disability provision does not require a functional limitation in an employee, only that an employee's illness or injury leads to a certain decline of earnings. He also contends that the remaining "Active at Work" language does not preclude recovery, especially when he never left "Active Work" status during the relevant time period. German further asserts that the LTD Plan's provisions on returning to "Active Work" and tolling the Elimination Period imply that an employee can claim LTD benefits in non-consecutive months, excluding months where an employee earned in excess of his predisability earnings. So long as his income falls below 80% of his predisability earnings in some months, and he does not exceed 80% of his predisability earnings for more than 180 consecutive days, German declares that he is afforded LTD benefits for those below-80% months.

MetLife's interpretation of these provisions is reasonable and neither arbitrary nor capricious. First, MetLife's reading of a functional limitation requirement for disability is a plausible one. The causal "due to" and "direct result" language in the policy can imply that there be an impairment that prevents the employee from accruing the same level of predisability earnings. In addition, construing the LTD Plan's "Disabled" and "Active at Work" terms as successive periods is sensible. The LTD Plan's language on recovering from disability after an employee returns to "Active Work" supports MetLife's position. What is more, German's reliance on the LTD Plan's provisions on the Elimination Period buttresses MetLife's position. In particular, the LTD Plan discusses tolling the Elimination Period "If You Return to Active Work" before or after an employee completes his Elimination Period, ECF No. 23-13 at 29, intimating the "Return" refers to an employee returning from being "Disabled." Only requiring an accidental injury or sickness and loss of earnings—without a functional limitation requirement or the need for successive "Disabled" and "Active Work" periods—could permit sales employees to claim LTD benefits in months and years where

they simply experienced lower sales and productivity that were unrelated to a previous injury. Taken together, MetLife properly concluded that being "Disabled" required a functional limitation, and that being "Disabled" and "Active at Work" were not overlapping periods under the LTD Plan.[3]

      b. *Disability Finding*

The parties also clash over whether German experienced functional limitations due to his injuries. German believes his various physicians' opinions show how his disability limited his work hours and productivity, and demonstrate the amount of pain he experiences. MetLife believes the findings from its IPCs, who evaluated German's past medical records and physician opinions, support its ultimate denial of LTD benefits.

While a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003), it "need not accord extra respect to the opinions of a claimant's treating physicians." *Blankenship*, 644 F.3d at 1356. "[E]ven where [a plaintiff's] own doctors offered different medical opinions than [a plan administrator's] independent doctors, the plan administrator may give different weight to those opinions without acting arbitrarily and capriciously." *Id.* It is also not arbitrary or capricious for MetLife to use, like here, "file" reviews by independent doctors as opposed to live examinations. *Id.* at 1357.

Here, nothing in the record indicates MetLife acted unreasonably in considering German's physicians' reviews. The four IPCs assessed all of German's previous treatments and attempted to contact German's past physicians before making their findings. As mentioned, none of the IPCs concluded German was functionally limited in conducting his sales associate duties. MetLife also hired vocational consultants who found that German could successfully perform his duties. *See* ECF Nos. 23-1 at 233; 23-2 at 18. None of these

---

[3] I do not believe the *contra proferentem* doctrine applies here since MetLife's interpretations and decisions are being judged under an arbitrary and capricious standard at this step of the analysis. *See White v. Coca-Cola Co.*, 542 F.3d 848, 857 (11th Cir. 2008) ("We have rejected *contra proferentem* in ERISA appeals, except during the first step of the *Williams* analysis, because '[t]he 'reasonable interpretation' factor and the arbitrary and capricious standard of review would have little meaning if ambiguous language in an ERISA plan were construed against the [plan administrator].' " (alterations in original)). Even if the doctrine applied, I do not believe German's interpretation was a reasonable one or that MetLife's interpretation was *de novo* wrong.

findings discounted the pain German experienced throughout the relevant period. *See* ECF 23-2 at 18. But after the extensive review of German's past physician's treatments and the IPC and vocational consultant reports, MetLife's decision to deny LTD benefits was a reasonable one and not arbitrary or capricious.

### 4. Conflict of Interest

Having resolved that MetLife's decision rests on reasonable grounds, I now turn to steps four and five of the Eleventh Circuit framework, which requires me to examine whether MetLife operated under a conflict of interest. A conflict of interest exists where the plan administrator determines eligibility for benefits and also pays claims out of its own assets. *See Capone*, 592 F.3d at 1195; *White v. Coca-Cola Co.*, 542 F.3d 848, 858 (11th Cir. 2008). The LTD Plan is not structured in this manner. AXA determines eligibility, but MetLife funds the Plan. Thus, no conflict of interest exists.

Because there is no conflict, the fifth step of the Eleventh Circuit analysis requires the court to end the inquiry and affirm the administrator's decision. I affirm MetLife's denial of LTD benefits to German.

## IV. CONCLUSION

For the reasons provided, it is **ORDERED and ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 30) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 28) is **GRANTED**. Defendant's denial of LTD benefits to German is **AFFIRMED**.

3. The Clerk is directed to **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers, at Miami, Florida, this 30th day of September 2016.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*